# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings Under Chapter 13 |
| RUSSELL W.M. EDWARDS | Case No. 13-30230 |
| Debtor, | |
| DAWN R. TICER | Case No. 14-41167 |
| Debtor, | |
| LOUIS & ROXANA LUNDAK | Case No. 10-31767 |
| Debtors, | |
| GENNIE HOOKER | Case No. 11-31655 |
| Debtor, | |
| VICTOR & BRANDY PERALEZ | Case No. 12-31239 |
| Debtors, | |
| GEORGE & SARAH VINSON | Case No. 13-30364 |
| Debtors, | |
| DONTARIUS J. MARKS & NICOLE D. GULLY | Case No. 14-30172 |
| Debtors, | |
| JESSICA L. MEDLEY | Case No. 14-30711 |
| Debtor, | |
| NATHAN H. H. VILAR | Case No. 14-30986 |
| Debtor, | |
| MELINDA T. PRINCE | Case No. 14-31308 |

1

Debtor,

CONSTANCE R. WOHLERT                                                            Case No. 15-30248

Debtor.

# OPINION

This matter is before the Court on the Trustees' motions for instructions regarding the proper treatment of post-petition wages held by the trustee at the time of a confirmed Chapter 13 case's dismissal, in light of the U.S. Supreme Court's decision in *Harris v. Viegelahn*, 575 U.S. __, 135 S.Ct. 1829, 191 L.Ed.2d 783 (2015). For the reasons stated below, the Court holds that the Bankruptcy Code ("Code") requires that such wages be returned to the debtor.

# Facts

The relevant facts in these cases are not in dispute. In each case: (1) the debtor's case was dismissed (voluntarily or involuntarily); (2) prior to dismissal, the Court confirmed the debtor's Chapter 13 plan; and (3) at the time of dismissal, the trustee had in his possession post-petition wages that had not yet been distributed to creditors in the manner prescribed by the terms of the confirmed plan. In *Harris v. Viegelahn*, the U.S. Supreme Court concluded that post-petition wages held by a Chapter 13 trustee at the time a case is converted to a Chapter 7 may not be disbursed to creditors, but instead must be returned to the debtor. *Harris*, 135 S.Ct. at 1835. Both Chapter 13 trustees in this district filed motions for instruction as to *Harris*'s effect on their post-*dismissal* disbursement policies. *See* Trustee's Motion for Instruction Regarding Disbursements in a Confirmed Case Subsequent to Dismissal, *In re Edwards*, Case No. 13-

30230, June 3, 2015 (Doc. #40); Trustee's Motion for Instructions Regarding Disbursements after Confirmation in Dismissed Case, *In re Ticer*, Case No. 14-41167, June 5, 2015 (Doc. #40).

The Court held a hearing on both motions on June 23, 2015. At the hearing, the Court also took this issue under advisement as it is present in nine other cases.[1] The parties were given until July 23, 2015 to file briefs. *See Edwards*, Minutes of Court (Bankr. S.D. Ill. June 23, 2015) (Doc. #46). This deadline was extended to August 6, 2015. *See id.*, Amended Order (Bankr. S.D. Ill. July 22, 2015) (Doc. #50). This Court's examination and understanding of the issue was benefitted greatly by the briefs filed by both Trustees, as well as by James J. Haller, Esq., of The Law Offices of Mueller and Haller, L.L.C., as *amicus curiae*.

## Issue

Before *Harris v. Viegelahn*, both Chapter 13 trustees in this district distributed post-petition payments received prior to a case's conversion or dismissal in accordance with the terms of the confirmed Chapter 13 plan. *Harris* directly precludes the Trustees from continuing this policy in the event of a case's conversion. The question presented in this case is, in light of *Harris*, whether post-petition property and wages in the trustee's possession at the time of dismissal of a Chapter 13 case must be distributed to creditors in accordance with the Chapter 13 plan or returned to the debtor.

---

[1] For a list of the additional cases, see Trustee's Brief Regarding Disbursements in a Confirmed Chapter 13 Case Subsequent to Dismissal, *Edwards*, August 6, 2015 (Doc. #52), Addendum A, at 12. These cases are also listed in the caption to this Opinion and the accompanying Order.

**Discussion**

**A.** *Harris v. Viegelahn*

Because the Trustees' motions seek this Court's determination as to the effect of *Harris* on their post-dismissal disbursement policies, this Court will now discuss the *Harris* decision. In *Harris*, the Chapter 13 debtor fell behind on his plan payments and, after his mortgagee foreclosed on his home, he converted his case to one under Chapter 7. *Harris*, 135 S.Ct. at 1836. At the time of conversion, the Chapter 13 trustee held $5,519.22 of the debtor's post-petition wages. *Id.* Ten days later, she disposed of the funds, distributing $1,200 to debtor's counsel, paying herself a fee of $267.79, and distributing the residue to the debtor's remaining creditors. *Id.* On motion by the debtor, the bankruptcy court ordered that the debtor be refunded the accumulated wages distributed post-conversion. *In re Harris*, Case No. 10-50655, Order Compelling Return of Funds (Bankr. W.D. Tex. Feb. 29, 2012) (Doc. #45). The district court affirmed. *In re Harris*, 491 B.R. 866, 876 (W.D. Tex. 2010). On appeal, the Fifth Circuit reversed. *Viegelahn v. Harris (In re Harris)*, 757 F.3d 468, 481 (5th Cir. 2014).

The Supreme Court granted certiorari to answer: "What happens to postpetition wages held by a Chapter 13 trustee at the time the case is converted to Chapter 7?" *Harris*, 135 S.Ct. at 1837. Specifically, the Court sought to answer whether "the Code require[s] return of the funds to the debtor, or [whether] it require[s] their distribution to creditors?" *Id.* The Court unanimously concluded that "a debtor who converts to Chapter 7 is entitled to return of any postpetition wages not yet distributed by the Chapter 13 trustee." *Id.* at 1835.

The Supreme Court's holding was based primarily on its reading of 11 U.S.C. § 348. Section 348(f) states that, absent the presence of bad faith on the part of the debtor, *see id.* § 348(f)(2), when a Chapter 13 case is converted

4

> property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion.

*Id.* § 348(f)(1)(A). Simply put, this provision prohibits the debtor's post-petition property from becoming part of the new Chapter 7 estate upon conversion from Chapter 13 and, thus, bars creditors from receiving the proceeds of such property upon the liquidation of the estate. *See Harris*, 135 S.Ct. at 1837. The Court opined that allowing those very same creditors to receive the debtor's wages in the form of a distribution pursuant to a terminated Chapter 13 plan "is incompatible with [the] statutory design." *Id.*

The Supreme Court also relied on § 348(e). That section states: "Conversion of a case under section 706, 1112, 1208, or 1307 of this title terminates the service of any trustee or examiner that is serving in the case before such conversion." 11 U.S.C. § 348(e). While the Court acknowledged that a "core service" of the Chapter 13 trustee is to make "'payments to creditors,'" *Harris*, 135 S.Ct. at 1838 (quoting 11 U.S.C. § 1326(c) (emphasis omitted)), it concluded that § 348(e) strips the trustee "of authority to provide that service" once the case is converted, *id.* (internal quotation marks and citations omitted).[2]

Accordingly, under *Harris*, funds held by the Chapter 13 trustee in a confirmed case that have not yet been distributed to creditors at the time of the case's conversion to Chapter 7 must be returned to the debtor. *Harris*, however, concerned those Code provisions relevant to the conversion of a Chapter 13 case. This case's posture, on the other hand, implicates those provisions governing the dismissal of Chapter 13 proceedings. While this Court is attentive to the fact that even non-binding decisions issued by the U.S. Supreme Court "should have

---

[2] On the other hand, the Court concluded that "[r]eturning funds to the debtor . . . is *not* a Chapter 13 Trustee service . . . ." *Id.* (emphasis added).

5

considerable persuasive value in the inferior courts," *Bateman v. Graves (In re Bateman)*, 515 F.3d 272, 282 (4th Cir. 2008) (internal citations and quotation marks omitted), it is confident that the Code provides the answer to the question presented.

### B. Applicable Law and Legal Conclusions

Courts are split as to whether creditors or debtors are entitled to receive funds held by the trustee at the time of a confirmed Chapter 13 case's dismissal. In a minority of courts, such funds must be distributed to creditors pursuant to the plan. *See In re Darden*, 474 B.R. 1, 7-9 (Bankr. D. Mass. 2012); *In re Parrish*, 275 B.R. 424, 425 (Bankr. D. D.C. 2002). A majority of courts, however, hold that such funds must be returned to the debtor. *See Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1414 (9th Cir. 1985); *Williams v. Marshall (In re Marshall)*, 526 B.R. 695, 697-98 (N.D. Ill. 2014); *In re Hamilton*, 493 B.R. 31, 39 (Bankr. M.D. Tenn. 2013); *In re Parker*, 400 B.R. 55, 62 (Bankr. E.D. Pa. 2009); *In re Slaughter*, 141 B.R. 661, 663 (Bankr. N.D. Ill. 1992).

Judicial disagreement as to the resolution of this issue is based on the interplay of two Code provisions: § 1326(a)(2) and § 349(b). Whereas courts in the minority hold that under § 1326(a)(2) the trustee must make disbursements pursuant to the confirmed plan no matter if the case is dismissed, the majority position is undergirded by § 349(b)'s directive that dismissal revests the debtor's post-petition earnings in the debtor. The Court must examine these two sections and determine which is applicable in this instance.

**1. Section 1326**

"Section 1326 of the Bankruptcy Code governs the Chapter 13 trustee's receipt of payments from the debtor and its distributions to creditors." *Marshall*, 526 B.R. at 697. It states, in relevant part:

> (a)(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount—
>     (A) proposed by the plan to the trustee;
>
> \*     \*     \*     \*
>
> (2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).

11 U.S.C. § 1326. Courts in the minority hold that the second sentence of § 1326(a)(2)—"If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable"—obliges Chapter 13 trustees to distribute funds held at the time of dismissal pursuant to the confirmed plan. *See, e.g.*, *Parrish*, 275 B.R. at 426 (concluding, on facts similar to those in the cases before this Court, that "by [§ 1326(a)(2)'s] terms, [funds held by a trustee at the time of dismissal] must be disbursed in accordance with the terms of the confirmed plan.").

The minority's conclusion, however, is not supported by the text of § 1326. "Section 1326(a)(2) must be read in [the] context of the entire subsection." *Hamilton*, 493 B.R. at 35. Subsection (a)(1)(A) directs debtors to make payments pursuant to the "proposed" plan. The first sentence of subsection (a)(2) refers to "payment[s] made under paragraph (1)(A)." The second sentence of subsection (a)(2) states that, upon confirmation of the plan, the trustee shall distribute

7

"such" payments in accordance with the plan. To determine that § 1326(a)(2) has any relevance to monies received by the trustee post-confirmation "would effectively read the word 'such' out of the second sentence." *Marshall*, 526 B.R. at 697. Therefore, "[t]he better reading of the provision limits the directive in the second sentence to payments made by the debtor to the trustee prior to the confirmation of the plan." *Id.*[3]

Because § 1326(a)(2) provides no instructions as to what a trustee shall do with funds received post-confirmation and on hand at the time of dismissal, this Court must determine whether § 349(b) does.

## 2. Section 349(b)

Section 349 delineates the effect of dismissing a Chapter 13 case. Section 349(b) states:

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
    (1) reinstates—
        (A) any proceeding or custodianship superseded under section 543 of this title;
        (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and
        (C) any lien voided under section 506(d) of this title;
    (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

---

[3] Once a plan is confirmed, § 1326(c) directs the trustee to "make payments to creditors under the plan." 11 U.S.C. § 1326(c). This subsection, however, also has no relevance to the distribution of payments held at the time of dismissal. As proclaimed by the Ninth Circuit Court of Appeals:
    [S]ection 1326[(c)] was intended to address only the question of who should act as disbursing agent (debtor, trustee, or someone else) of Chapter 13 plan funds. [It] does not address whether [a] [t]rustee [is] required to continue making such distributions after [a] . . . Chapter 13 case [is] dismissed.
*Nash*, 765 F.2d at 1413 n.1.

8

>   (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b). The majority's position that post-petition wages must be returned to debtors upon dismissal is supported by § 349(b)(3)'s directive that dismissal "revests" estate property "in the entity in which such property was vested immediately before commencement" of the Chapter 13 case.

This Court agrees with the majority position. As is evident from its text, "[t]he scope of § 349(b) is broad, and serves to undo the bankruptcy case to the extent possible." *Hamilton*, 493 B.R. at 38. This broad interpretation is "in harmony with Congress' stated intent that the purpose of this section is to 'undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.'" *In re Sanitate*, 415 B.R. 98, 105 (E.D. Pa. 2009) (quoting S. Rep. No. 95-989, 48-49, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835).

"Property of the estate" in a Chapter 13 case includes "earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title." 11 U.S.C. § 1306(a)(2). Therefore, § 349(b)(3)'s mandate that dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case" applies to the debtor's post-petition wages. *See Hamilton*, 493 B.R. at 40 ("Without regard to the immaturity of the debtor's interest in future wages that have not been earned, the Bankruptcy Code includes those future earnings in property of the Chapter 13 estate."); *see also In re Michael*, 699 F.3d 305, 313 (3d Cir. 2012) ("[W]hen the debtor transfers funds to the Chapter 13 trustee to fulfill its

obligations under a confirmed plan . . ., the funds become part of the estate, and the debtor retains a vested interest in them."). Accordingly, § 349(b)(3) mandates that the Trustees return the earnings at issue in the cases before the Court to the respective debtors.

This Court's holding is also impelled by its conclusion that dismissal "effectively vacates[s] the . . . confirmed plan." *Nash*, 765 F.2d at 1413; *see also In re Parker*, 400 B.R. 55, 60 (Bankr. E.D. Penn. 2009) ("[D]ismissal renders the former debtor no longer obligated to tender plan payments, and frees her creditors and the bankruptcy trustee from any compliance with the terms of the confirmed plan.").[4] To hold otherwise would be to fail to give full effect to § 349(b)'s broad scope. Further, if this Court were to allow distributions in accordance with the plan upon dismissal, it would not be able to supply a principled reason as to why other provisions of the plan do or do not remain operational after such time. *See Hamilton*, 493 B.R. at 41 ("Courts requiring distributions pursuant to the plan after dismissal do not explain how courts and trustees are to decide which plan provisions survive dismissal and which do not. Do priorities in the Code still control? What happens to the claims allowance process?").

Therefore, under § 349(b)(3), post-petition property and wages held by the trustee at the time of dismissal must be distributed to the debtor. Accordingly, the Trustees herein must distribute such funds to the debtors in the cases before the Court.

## Conclusion

Post-petition property and wages held by the trustee at the time of dismissal of the debtor's confirmed Chapter 13 case must be distributed to the debtor. This decision is based not on the Supreme Court's decision in *Harris v. Viegelahn*, but on § 349(b)(3) and the effect of

---

[4] While § 349(b)(2) provides for the vacation of certain orders upon dismissal, it does not specifically reference confirmation orders. *See* 11 U.S.C. § 349(b)(2).

dismissal on a Chapter 13 case.[5] The debtor has a vested right in the post-petition property and wages held by the trustee at the time of the dismissal of the confirmed Chapter 13 case. Further, the dismissal of a case renders the Chapter 13 plan effectively vacated and so prevents the trustee from distributing funds in accordance with its terms. Accordingly, IT IS ORDERED that the undistributed post-petition property and wages held by the Trustees at the time of the dismissal of the cases before this Court must be distributed to the respective debtors.

SEE ORDER ENTERED THIS DATE.

ENTERED: September 22, 2015

                                    /s/ Laura K. Grandy
                                    UNITED STATES BANKRUPTCY JUDGE

---

[5] The briefing parties are, quite understandably, concerned about this decision's impact on debtors' attorneys' fees. Without a proper mechanism in place, the distribution of funds at dismissal to the debtor may result in a failure to compensate the debtor's attorney for work performed. To prevent this result, *amicus* and the Trustees have proposed that the Court enter a standing order stating that, upon entry of an order of dismissal in a Chapter 13 case, the Court retains jurisdiction to allow debtors' attorneys' to move to receive the balance of their fees before the funds are distributed to the debtor. *See* Addendum to *Amicus Curiae* Brief of The Law Offices of Mueller and Haller LLC, *Edwards*, August 10, 2015 (Doc. #53). This proposal is based on § 349(b)'s directive that dismissal affects a case as described in subsections (1)–(3), "[u]nless the court, for cause, orders otherwise." 11 U.S.C. § 349(b).

    The Court appreciates the parties' suggestion, but it is not prepared to enter a standing order to the effect requested because the issue of the Court's jurisdiction and ability to do as requested is not properly before the Court. The Court does note that this problem was addressed by the Bankruptcy Court for the District of New Mexico in *In re Beauregard*, 533 B.R. 826 (Bankr. D. N.M. 2015) (joint opinion of Jacobitz, C.J., and Thuma, J.), albeit in the conversion context:

> Payment of attorney's fees was not questioned or challenged in *Harris*. The attorney there obtained an assignment by the debtor of his right to the funds held by the Chapter 13 trustee, to secure payment of post-conversion attorneys' fees. Debtor's counsel attached the assignment to the notice of conversion. The solution for Chapter 13 debtor's counsel might be to include in their engagement letters an assignment of and security interest in the debtor's post-petition wages held by the standing trustee on the date of conversion, to pay allowed unpaid attorney' fees and costs incurred during the Chapter 13 case.

*Id.* at 832.